**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 23-cr-035-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**1.**    **TYLER AARON HOLMES,**
2.    EDWARD MCCABE ROBINSON,

    Defendants.

---

**ORDER DENYING DEFENDANT HOLMES'S REQUEST FOR AN ORDER REGARDING DISCOVERY OF EXCULPATORY EVIDENCE**

---

This matter comes before the Court on Holmes's Request for an Order Regarding Discovery of Exculpatory Evidence ("Motion"). (ECF No. 43.) The Government filed a response in opposition. (ECF No. 45.) No reply was permitted. The parties are familiar with the background of the case that led to the filing of the Motion, and thus the Court will not reiterate it here. (*See* ECF No. 43 at 1–4; ECF No. 45 at 1–3.) For the following reasons, the Motion is denied.

## I.    LEGAL STANDARDS

There is "no general constitutional right to discovery" in criminal proceedings. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Here, Holmes requests discovery under Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, and *Giglio v. United States*, 405 U.S. 150 (1972).[1]

---

[1] Under *Giglio*, exculpatory evidence includes evidence affecting witness credibility if the witness's reliability will likely determine guilt or innocence.

A.     *Brady v. Maryland*

"The Constitution, as interpreted in *Brady*, does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant." *Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 823 (10th Cir. 1995). *Brady* requires disclosure only of evidence that is both favorable to the accused, and "material either to guilt or to punishment." *Brady*, 373 U.S. at 87. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also United States v. Allen*, 603 F.3d 1202, 1215 (10th Cir. 2010). A "reasonable probability," in turn, is a "probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682 (internal quotation marks omitted).

The Tenth Circuit also has stated that evidence is material if it "might meaningfully alter a defendant's choices before and during trial . . . [including] whether the defendant should testify." *Case v. Hatch*, 731 F.3d 1015 (10th Cir. 2013) (quoting *United States v. Burke*, 571 F.3d 1048, 1054 (10th Cir. 2009) (alterations in original; internal quotation marks omitted)). The Tenth Circuit has noted that "[t]he mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard." *United States v. Fleming*, 19 F.3d 1325, 1331 (10th Cir. 1994).

"To be material under *Brady*, undisclosed information or evidence acquired through that information must be admissible." *Banks v. Reynolds*, 54 F.3d 1508, 1521 n.34 (10th Cir. 1995) (citation omitted). In *Cone v. Bell*, the Supreme Court noted:

> Although the Due Process Clause of the Fourteenth Amendment, as interpreted by *Brady*, only mandates the

disclosure of material evidence, the obligation to disclose evidence favorable to the defense may arise more broadly under a prosecutor's ethical or statutory obligations. *See* [*Kyles v. Whitley*, 514 U.S. [419, 437 (1995)] ("[T]he rule in [*Bagley*] (and, hence, in *Brady*) requires less of the prosecution than the ABA Standards for Criminal Justice Prosecution Function and Defense Function 3-3.11(a) (3d ed. 1993)"). *See also* ABA Model Rules of Professional Conduct 3.8(d) (2008) ("The prosecutor in a criminal case shall" "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal"). As we have often observed, the prudent prosecutor will err on the side of transparency, resolving doubtful questions in favor of disclosure.

556 U.S. 449, 470 n.15 (2009). The Government bears the burden of producing exculpatory materials; a defendant has no obligation to first note that such materials exist. *See Kyles*, 514 U.S. at 437 (stating that the prosecution has an affirmative duty to disclose evidence, because "the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached"); *United States v. Padilla*, 2011 WL 1103876, at *6 (D.N.M. Mar. 14, 2011). This obligation means that the Government must "volunteer exculpatory evidence never requested, or requested only in a general way." *Kyles*, 514 U.S. at 433.

"It is well settled that there is no 'affirmative duty upon the government to take action to discover information which it does not possess.'" *United States v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991) (quoting *United States v. Beaver*, 524 F.2d 963, 966 (5th

3

Cir. 1975), *cert. denied*, 425 U.S. 905 (1976)); *accord United States v. Kraemer*, 810 F.2d 173, 178 (8th Cir. 1987) (explaining that the prosecution is not required "to search out exculpatory evidence for the defendant"). On the other hand, "a prosecutor's office cannot get around *Brady* by keeping itself in ignorance, or by compartmentalizing information about different aspects of a case." *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984). "A prosecutor must disclose information of which it has knowledge and access." *Padilla*, 2011 WL 1103876, at *7 (citing *United States v. Bryan*, 868 F.2d 1032, 1037 (9th Cir. 1989)). "A prosecutor may have a duty to search files maintained by other 'governmental agencies closely aligned with the prosecution' when there is 'some reasonable prospect or notice of finding exculpatory evidence.'" *Id.* (quoting *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992)). "A prosecutor does not have a duty, however, to obtain evidence from third parties." *Id.* (citing *United States v. Combs*, 267 F.3d 1167, 1173 (10th Cir. 2001) (observing that *Brady* does not oblige the government to obtain evidence from third parties)).

**B.     Rule 16**

Rule 16 provides that the court regulates discovery. Fed. R. Crim. P. 16(d). "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). Further, Rule 16(a)(1)(E) provides:

> (E) Documents and Objects. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

> (i) the item is material to preparing the defense;
>
> (ii) the government intends to use the item it its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

"Rule 16 is 'broader than *Brady*' in that it mandates disclosure of any material information, whether exculpatory or not." *United States v. Smith*, 2017 WL 3172790, at *2 (D.N.M. May 16, 2017) (citation omitted).  But "Rule 16 does not authorize a blanket request to see the prosecution's file," and a defendant may not use the rule to engage in a "fishing expedition." *United States v. Maranzino*, 860 F.2d 981, 985–86 (10th Cir. 1988) (citing *Jencks v. United States*, 353 U.S. 657, 667 (1957)).

The defendant bears the burden of making a *prima facie* showing of materiality. *See United States v. Garrison*, 2016 WL 8416755, at *3 (D. Colo. Sept. 22, 2016).  Evidence is "material" under Rule 16 if "there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, . . . or assisting impeachment or rebuttal." *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996) (internal quotation marks omitted, alterations in original) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotation marks omitted)).  The Eleventh Circuit has explained that under Rule 16(a)(1)(E)(i), an item

> need not be disclosed unless the defendant demonstrates that it is material to the preparation of his defense.  A general description of the item will not suffice; neither will a conclusory argument that the requested item is material to the defense.  Rather, the defendant must make a specific request for the item together with an explanation of how it will be "helpful to the defense."  The defendant must "show" "more than that the item bears some abstract logical

>relationship to the issues in the case . . . .

*United States v. Jordan*, 316 F.3d 1215, 1250 (11th Cir. 2003) (internal citations, quotations, and some alterations omitted). "Although the materiality standard is not a heavy burden, the Government need disclose Rule 16 material only if it enables the defendant significantly to alter the quantum of proof in his favor." *Graham*, 83 F.3d at 1474 (alterations, citations, and internal quotation marks omitted).

## II. ANALYSIS

In the Motion, Holmes states that he is "concerned that the government misunderstands the scope of its obligations to disclose exculpatory evidence under *Brady* and its progeny" and contends that "specific guidance from the Court on the scope and timing of any such disclosures is warranted[.]" (ECF No. 43 at 4.) In light of his concerns that the Government is withholding exculpatory information, Holmes requests that the Court issue a proposed *Brady* order, which would require the Government to disclose a variety of documents. (ECF No. 43-1.) Among other things, the proposed order requires that the Government disclose Corrections Officer ("CO") Dashelle Guertin's personnel file and includes the parties that Holmes argues must be considered part of the prosecution team for purposes of its discovery demands. (*Id.*)

### A.     CO Guertin's Personnel File

CO Guertin responded to the alleged assault by Defendants Holmes and Robinson, and she specifically radioed out the assault and attended to the unconscious victim. (ECF No. 45 at 1–2.) Holmes requests CO Guertin's personnel file, which he speculates contains both exculpatory and impeachment evidence. (ECF No. 43 at 9.)

Holmes states that he has obtained information "alleging CO Guertin sympathized with . . . white supremacists" and that she "often displayed symbols associated with white supremacy, including fingernail paint displaying lightning bolt 'SS'." (*Id.* at 3.) He states that "CO Guertin['s] sympathies also led to inappropriate relationships with inmates, including inappropriate physical contact with inmates and exchanging information." (*Id.*) Further, he contends that if CO Guertin "is a liar," "had a physical relationship with inmates belonging to the Aryan Nation, and the two shared information with each other, it would "tend[] to [] disprove the existence of an alleged fact," *i.e.*, CO Guertin witnessed Mr. Holmes assault the victim." (*Id.* at 9.) Accordingly, with these allegations in mind, "coupled with the fact that CO Guertin was employed with the BOP for less than two years," Holmes requests CO Guertin's personnel file.

The Government opposes Holmes's request for CO Guertin's personnel file, arguing that

> [e]ven if all of Defendant's allegations and inferences are true, Guertin's political leanings in and of themselves does not open Officer Guertin's entire personnel file to discovery. A personnel file contains confidential information and personal details that can and should remain private without violating Defendant's right to *Giglio* or *Brady* material. A personnel file may contain such documents as hiring records, salary, benefits, next of kin notification information, job description, health and life insurance paperwork, medical benefit and allocation information, job application and/or resume, offer of employment, IRS Form W-4 (the Employee's Withholding Allowance Certificate) receipt or signed acknowledgment of employee handbook, performance reviews, and disciplinary actions. But because Officer Guertin may have had fingernail polish designs that looked like lightning bolts, Defendant claims her entire file must be open to inspection. Request for Order at 2.

(ECF No. 45 at 3.)

Having considered both parties' arguments, the Court denies Holmes's request for CO Guertin's personnel file. The undersigned has addressed similar requests for law enforcement officer's personnel files in the past and has denied them, finding that a defendant has "no constitutional right to law enforcement witnesses' personnel files simply to see whether they contain potentially impeaching information." *United States v. Garrison*, 147 F. Supp. 3d 1173, 1185 (D. Colo. 2015). Of course, if the Government knows of such information, *Giglio* requires its disclosure. *Id.* However, "neither *Giglio* nor any other authority gives a defendant a right of access to all categories of information where impeaching material might exist." *Id.*

Further, in another prison assault case similar to this one, a defendant requested a lieutenant's personnel file, arguing generally that he had an exculpatory interest in the lieutenant's personnel and disciplinary history while employed by BOP. *See United States v. King*, 2021 WL 4441514, at *4 (D. Colo. Sept. 28, 2021), *on reconsideration in part*, 2021 WL 5565807 (D. Colo. Nov. 29, 2021). The undersigned denied the request, relying on the Government's statements that it would "comply with its obligation to disclose any information that has potential exculpatory or impeachment value or value under *Giglio* and *Brady* but notes that its obligations do not entitle Defendant to 'blanket disclosure of all information in [the lieutenant's] personnel file.'" *Id.*

The Court concludes that Holmes has failed to demonstrate that he is entitled to CO Guertin's personnel file. The Court relies on the Government's representation that it is complying with its discovery obligations under *Giglio* and *Brady* (ECF No. 45 at 6) and

8

therefore denies this portion of the Motion.

B.     **Proposed Order**

Upon review of the proposed order, the Court agrees with the Government that it exceeds the Government's discovery obligations under the law. (ECF No. 45 at 8.) The Government is not required to divulge "every possible shred of evidence that could conceivably benefit" Holmes, nor is Holmes entitled to access "all categories of information where impeaching material might exist." (*Id.* at 8–9 (quoting *Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 823 (10th Cir. 1995) and *Garrison*, 147 F. Supp. 3d at 1185).) Additionally, the proposed order includes BOP as part of the prosecution team. But the Government thoroughly explains the reasons for which the prosecution team "does not extend to the entire federal government or even the entire Department of Justice." (*Id.* at 11.)

While the Court will not reiterate the Government's full position here, it agrees that it cannot issue this overly expansive proposed order. As it has done in past criminal cases, the Court relies on the Government's statement that it "takes its discovery obligations seriously and has complied with—indeed, exceeded—those obligations as defined by the law that applies, as compared to the law that the defense wishes applied." (*Id.* at 15.) Therefore, the Court denies Holmes's request to issue the proposed order.

### III. CONCLUSION

Accordingly, Holmes's Request for an Order Regarding Discovery of Exculpatory Evidence (ECF No. 43) is DENIED.

Dated this 22nd day of March, 2024.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge